# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ERIC BRIDGES                                    CIVIL ACTION

VERSUS                                          NO.  12-2684

N. BURL CAIN, WARDEN                            SECTION "G"(2)


## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.       FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Eric Bridges, is a convicted inmate currently incarcerated in the

Louisiana State Penitentiary in Angola, Louisiana.[2]  Bridges was charged by bill of

information in St. Tammany Parish on January 2, 2008, with two counts of armed

robbery.[3]  The Louisiana First Circuit Court of Appeal summarized the facts of the case

as follows:

> Armed Robbery at Corporate Cleaners
> Johniva Elaine Breakall, the victim of count I, testified at trial.  On August 9, 2002, she was working at Corporate Cleaners on Gause Boulevard in Slidell. At approximately 4:00 or 4:30 a.m., Breakall arrived for work with her mother, Marilyn Diaspro, and her brother, James Diaspro. A man wearing a mask walked into the business through the back door and told Marilyn to get up because he was robbing her. The robber was approximately 6'4" tall. The robber brought Marilyn over to Breakall and, pointing the revolver at Breakall's face, told her to get up because he was also robbing her. The robber ordered James to go to the front of the business.  The robber held a revolver to Marilyn's head and ordered her and Breakall to also go to the front of the business. At the front of the business, the robber ordered Marilyn and James to lie on the floor, and ordered Breakall to open the cash register and give him the money. Breakall put approximately $50 into a "book bag" that the robber had brought with him. The robber then demanded the keys to one of the vans parked at the front of the business. The keys were under the glass counter and were taken by the robber from the counter. Thereafter, the robber ordered Breakall, Marilyn, and James to start counting.  He then left, but quickly returned and ordered James to pull the phone cord out of the wall. Breakall testified that she was terrified during the robbery and thought she was going to die.
> The robber drove off in one of the business's vans. The van was recovered in New Orleans East at approximately 6:30 a.m. A box had been placed on the gas pedal and the vehicle had been abandoned in a grassy area. Someone had attempted to set the van on fire.

---

[2]Rec. Doc. No. 1, p. 8 of 21.

[3]St. Rec. Vol. 1 of 4, p. 30.

Armed Robbery at Burger King

Roxanna Navarre, the victim of count II, also testified at trial. On August 11, 2002, she was working at the Burger King restaurant on Gause Boulevard in Slidell. At approximately 7:45 a.m., a man with a gun "came over the counter" from the back and opened the front door to allow his accomplice to enter the restaurant. One of the robbers was short, while the other was tall. The shorter robber had a red handkerchief across his face and was armed with a revolver. He pointed his gun at Navarre and Shervette, who was also working at the restaurant. He forced Shervette and another employee into the freezer and then, along with his accomplice, forced Navarre into the office. Navarre was shaking, "scared to death," and thought she was going to die. The taller robber told Navarre to open the safe, and she complied.  He removed the cash drawer from the safe, but forced Navarre to remove the money from the drawer and place it into a "duffel bag" that he had brought with him. He also took the night deposit from the safe. The robbers left the restaurant with approximately $1,500 and Navarre's vehicle, after taking her keys from her. Navarre's vehicle contained her purse with her credit cards, identification, and ATM card. She identified defendant in court as the shorter robber and indicated that she would "never forget his eyes." The police also found a partial shoe print on the counter at the restaurant following the robbery.

Navarre's vehicle was recovered in New Orleans East shortly before midnight on August 12, 2002. Defendant was driving the vehicle. A jacket with a receipt in the left-front pocket from Entergy to defendant was in the vehicle. The van also contained a black "book bag." Defendant was wearing shoes with characteristics which matched the partial shoe print recovered from the counter at the Burger King restaurant.

The personal items contained in Navarre's purse were never recovered. Navarre testified that after the recovery of her vehicle, she was afraid to drive the vehicle because the robbers knew her address and had all of her keys, including the keys to her house. She also suffered anxiety attacks and panic attacks and never returned to Burger King.

Following advice of his <u>Miranda</u> rights, defendant confessed to dropping off his accomplice to commit the armed robbery at Corporate Cleaners and confessed to being the robber wearing the red mask in the armed robbery at Burger King.

<u>State v. Bridges</u>, 2009 WL 3447424, at *1-2 (La. App. 1st Cir. 2009); State Record

Volume 3 of 4, Louisiana First Circuit Court of Appeal Opinion, 2009-KA-0866,

October 27, 2009.

Trial commenced on December 9, 2008, when a jury was chosen and sworn and the trial court gave preliminary instructions.[4]  The following morning, the trial court held a hearing on Bridges's motion to suppress his confession.[5]  On that same date, the trial court, without assigning reasons, denied Bridges's motion.[6]  On December 11, 2008, Bridges was found guilty as charged on both counts 1 and 2.[7]  The State filed a multiple offender bill against Bridges as to count 2.  After a hearing on February 26, 2009, the state trial court adjudicated Bridges a second felony offender as to count 2.[8]  Without considering Bridges's second offender status, however, the court sentenced Bridges to 50 years in prison on count 1 and, as a second offender, to 60 years in prison on count 2, with the sentences running concurrently.  The court specified that both sentences were to be served without benefit of probation, parole, or suspension of sentence and with credit for time served.[9]

---

[4]St. Rec. Vol. 1 of 4, pp. 105-242.

[5]Id., p. 53, Motion to Suppress, 5/2/08; St. Rec. Vol. 2 of 4, pp. 244-273, Transcript of Motion to Suppress Hearing.

[6]St. Rec. Vol. 2 of 4, p. 273.

[7]Id., Trial Transcript, pp. 429, 473-74, 12/11/08.

[8]Id., Multiple Bill and Sentencing Transcript, pp. 487-88, 2/26/09.

[9]Id. p. 490.

On direct appeal, Bridges's appointed counsel argued only that the sentences were excessive.[10]  On October 27, 2009, the Louisiana First Circuit affirmed the convictions, habitual offender adjudication and sentences, finding no merit to the claim of excessiveness.[11]

On November 13, 2009, Bridges submitted a timely writ application to the Louisiana Supreme Court, arguing that his sentences were excessive.[12]  On April 23, 2010, the Louisiana Supreme Court denied Bridges's writ application without opinion.[13]

Bridges's convictions became final 90 days later, on July 22, 2010, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On August 23, 2010, Bridges submitted an application for post-conviction relief to the state trial court, asserting the following claims: (1) Trial counsel was ineffective because he (a) failed to raise speedy trial and due process violations; (b) failed to ensure that proper instructions were provided to the jury; (c) failed to object to prosecutorial

---

[10]St. Rec. Vol. 4 of 4, Appeal Brief, 2009-KA-0886.

[11]State v. Bridges, 2009 WL 3447424, at *4; St. Rec. Vol. 3 of 4, 1st Cir. Opinion, 2009-KA-0886, 10/27/09.

[12]St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 2009-KO-2490, (dated 11/13/09).

[13]State v. Bridges, 34 So.3d 269 (La. 2010); St. Rec. Vol. 4 of 4, Supreme Court Opinion, 2009-KO-2490, 4/23/10.

misconduct; and (d) fell asleep in front of the jury on several occasions.  (2) Appellate

counsel was ineffective for failing to raise issues related to prosecutorial misconduct.[14]

On October 8, 2010, the state trial court denied the application, finding that the claims

"have no merit and fail to meet either of the requirements of <u>Strickland v. Washington</u>,

104 S.Ct. 2052 (1984)."[15]  On October 27, 2010, Bridges timely filed a post-conviction

writ application in the Louisiana First Circuit, raising the same claims he raised before

the trial court.[16]  On February 22, 2011, the Louisiana First Circuit denied claims (1)(a)

and (c) on the merits and denied the remaining claims on procedural grounds.  The state

appellate court stated:

> **WRIT DENIED IN PART AND DENIED IN PART ON THE SHOWING MADE.**  Relator's writ application is denied as to Claims 1 and 3 of relator's application for postconviction relief.  As to all other claims for relief, this Court cannot adequately review the trial court's ruling herein.  Relator failed to include pertinent documents from the district court's record.   Supplementation of this writ application and/or an application for rehearing will not be considered.  <u>See</u> Uniform Rules of Louisiana Court's of Appeal, Rules 2-18.7 & 4-9.  Any future filing on this issue should include the entire contents of this application, the missing items noted above, and a copy of this ruling.  In the event relator elects to file a new application with this Court, the application must be filed on or before April 11, 2011.[17]

---

[14]St. Rec. Vol. 4 of 4, Uniform Application for Post-Conviction Relief, (dated 8/23/10).

[15]<u>Id</u>., Trial Court Order, 10/8/10.

[16]<u>Id</u>., Application for Supervisory Writ of Review, (dated 10/27/10).

[17]<u>State v. Bridges</u>, No. 2010-KW-2003 (La. App. 1st Cir. 2/22/11); St. Rec. Vol. 3 of 4.  Bridges did not file a new application with the Louisiana First Circuit.

On March 21, 2011, Bridges timely filed a writ application in the Louisiana Supreme Court, asserting the same claims he had raised in the trial and appellate courts.[18] On January 20, 2012, the Louisiana Supreme Court denied Bridges's writ application without opinion.[19]

## II.   FEDERAL HABEAS PETITION

On November 9, 2012, the clerk of this court filed Bridges's petition for federal habeas corpus relief in which he asserts the following grounds for relief:  (1) His sentences are excessive.  (2) Trial counsel was ineffective in failing to raise a speedy trial issue and due process violations.  (3) Trial counsel was ineffective in failing to ensure that a proper jury instruction was given.  (4) Trial counsel was ineffective in failing to object to prosecutorial misconduct.  (5) Trial counsel was ineffective because he fell asleep in front of the jury on several occasions.  (6) Appellate counsel was ineffective in failing to assert that the prosecutor acted improperly, that the bill of information lodged against him should have been quashed, and that he was prejudiced by the fact that trial counsel fell asleep.[20]

---

[18]St. Rec. Vol. 4 of 4, Application for Writ of Certiorari or Review, (dated 3/21/11).

[19]State v. Bridges, 78 So.3d 137 (La. 2012); St. Rec. Vol. 4 of 4, Supreme Court Opinion, 2011-KH-0605, 1/20/12.

[20]Rec. Doc. No. 1-1, pp. 6-20.

The State filed a response in opposition to Bridges's petition, alleging that the petition was not timely filed, that Bridges failed to exhaust available state court remedies as to some of his claims, and that his claims are without merit.[21]

III.   GENERAL STANDARDS OF REVIEW

The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[22] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Bridges's petition, which, for reasons discussed below, is deemed filed in this federal court on November 1, 2012.[23]

---

[21]Rec. Doc. No. 12, pp. 5-6.

[22]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[23]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Bridges's petition was filed by the clerk of this court on November 9, 2012, when Bridges was granted pauper status and was allowed to proceed without paying a filing fee. Bridges dated his habeas petition on November 1, 2012. This is the earliest date on which he could have delivered his petition to prison officials for mailing.  The fact that his petition was submitted without the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State argues that Bridges's petition is untimely and that some of his claims were not exhausted in the state courts.  The State asserts that Bridges's post-conviction writ application filed in the Louisiana First Circuit on October 27, 2010, did not toll prescription because it was not properly filed, in that some of the claims were not considered on the merits because Bridges "failed to include pertinent documents from the district court's record."[24]  For the following reasons, I cannot accept the State's time-bar defense.

IV.   STATUTE OF LIMITATIONS

The AEDPA requires a petitioner to bring his Section 2254 petition in most cases within one year of the date his conviction became final.[25]  Duncan v. Walker, 533 U.S.

---

[24]See discussion supra at pp. 6-7.

[25]The statute of limitations provision of the AEDPA at 28 U.S.C. § 2244(d), provides for other triggers which do not apply here:
(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
A.  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

167, 179-80 (2001).  Bridges's conviction was final on July 22, 2010.  Thus, under a literal application of the statute, Bridges had one year from the date his conviction became final, or until July 22, 2011, to file his federal habeas corpus petition, which he did not do. His petition must be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled.

First, the United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled, but only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing.  Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights.  Pace, 544 U.S. at

---

B.  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D.  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

 (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

418-19; <u>Cousin</u>, 310 F.3d at 848.  In this case, Bridges offers no basis for equitable tolling, and my review of the record has uncovered no rare or extraordinary circumstances that might warrant equitable tolling.

In addition to equitable tolling, however, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a <u>properly filed</u> application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings.  <u>Flanagan</u>, 154 F.3d at 199 n. 1. The Supreme Court has clearly described this provision as a tolling statute.  <u>Duncan</u>, 533 U.S. at 175–178.

The decisions of the Fifth Circuit and other federal courts have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n. 1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must conform with a state's applicable procedural filing requirements.  The State asserts that Bridges's October 27, 2010 post-conviction application did not conform with the state appellate court's applicable procedural filing requirements.  The State's claim in this regard is only partially correct. Two of Bridges's ineffective assistance claims were properly filed, and the Louisiana First Circuit ruled on the merits.  The State does not cite and my research has uncovered no case law allowing a partial tolling of the AEDPA statute of limitations because a portion of a writ application was improperly filed.

Because two of Bridges's claims in his October 27, 2010 writ application were properly filed and considered on the merits, I cannot conclude that Bridges's timely filed writ application did not toll the AEDPA statute of limitations during the time it was pending before the Louisiana First Circuit.  After the state appellate court's February 22, 2011 denial of Bridges's writ application, Bridges timely sought relief in the Louisiana Supreme Court.[26] The statute of limitations remained tolled throughout Bridges's post-

---

[26]See discussion supra at p. 7.

conviction proceedings, until January 20, 2012, when the Louisiana Supreme Court denied Bridges's writ application. Bridges filed the instant action approximately nine months later, on November 1, 2012. The State does not contest the fact that if Bridges's post-conviction writ applications tolled prescription, the instant petition is timely. Bridges's conviction became final on July 22, 2010, and Bridges filed his post-conviction writ application with the trial court one month later, on August 23, 2010.[27] Thus, only about ten (10) months of the 12-month AEDPA statute of limitations expired before Bridges filed the instant action.

## V.    STATE COURT EXHAUSTION

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." Whitehead v. Johnson, 157 F.3d 384, 387 (5th Cir. 1998) (citing Rose v. Lundy, 455 U.S. 509, 519-20 (1982)); accord Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Nobles, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." Whitehead, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); Rose, 455 U.S. at 519-20).

The exhaustion requirement is satisfied when each claim is raised at each level of the Louisiana courts. See O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Baldwin

---

[27]See discussion supra at pp. 5-6 and Rec. Doc. No. 12 at p. 3.

v. Reese, 541 U.S. 27, 32 (2004).  "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures.  O'Sullivan, 526 U.S. at 845; accord Duncan v. Walker, 533 U.S. 167, 177-79 (2001).

The State alleges that Bridges's petition is a mixed petition, presenting three claims, Nos. (2), (4) and (5), which were not exhausted in the state courts.  The record indicates, however, that Bridges properly presented all of his federal claims to the Louisiana Supreme Court.[28]  Bridges likewise presented all of his federal claims to the state trial and appellate courts, although the Louisiana First Circuit did not consider three of the claims because he failed to submit supporting documents from the district court's record.[29]  Such a deficiency might ordinarily render the three claims unexhausted.  See Baldwin v. Reese, 541 U.S. 27, 32 (2004) (prisoner must fairly present his claims "in each appropriate state court" in accordance with state procedural requirements).  Nevertheless, because claims (2), (4) and (5), along with claims (1) and (3), are all without merit, I will address them without requiring full exhaustion. 28 U.S.C. § 2254(b)(2).

---

[28]See discussion supra at p. 7.

[29]See discussion supra at pp. 6-7.

VI.   <u>STANDARDS OF MERITS REVIEW</u>

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  <u>Nobles</u>, 127 F.3d at 419–20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct ... and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), <u>cert</u>. <u>denied</u>, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision " 'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  <u>Penry v. Johnson</u>, 215 F.3d 504, 507 (5th Cir. 2000) (quoting <u>Miller v. Johnson</u>, 200 F.3d 274, 280-81 (5th Cir.), <u>cert</u>. <u>denied</u>, 531 U.S. 849 (2000)), <u>aff'd in part, rev'd in part on other grounds</u>, 532 U.S. 782 (2001); <u>Hill</u>, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts. Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts of
> the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405–06, 412–13 (2000); Penry, 532 U.S. at 792–93;

Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24–25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003).  The burden is on the petitioner

to show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24–25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

VI.   EXCESSIVE SENTENCES

Bridges claims that his sentence of 50 years in prison on Count 1, armed robbery

of Corporate Cleaners, and his sentence of 60 years in prison as a second offender on

Count 2, armed robbery of Burger King, were excessive.  Bridges complains that he

should not have been sentenced to 50 years for armed robbery of the cleaners because

"he never actually went inside the dry cleaners and committed the acts constituting the

robbery."[30]  He asserts that his sentence of 60 years as a second offender on Count II was

excessive because his prior conviction was non-violent and there was no evidence that

he "physically harmed" anyone or that he was "particularly cruel" while he held a gun

on the victims and demanded money.[31]

     If a sentence is within the statutory limits, a federal habeas court will not upset it

unless it is grossly disproportionate to the gravity of the offense. <u>Harmelin v. Michigan</u>,

501 U.S. 957, 1001 (1991); <u>Solem v. Helm</u>, 463 U.S. 277, 291–92 (1983).  "[W]hen a

threshold comparison of the crime committed to the sentence imposed leads to an

inference of 'gross disproportionality,'" a court will consider (a) the sentences imposed

on other criminals in the same jurisdiction and (b) the sentences imposed for commission

of the same offense in other jurisdictions.  <u>Smallwood v. Johnson</u>, 73 F.3d 1343, 1347

(5th Cir. 1996) (quoting <u>Harmelin</u>, 501 U.S. at 1005) (citing <u>McGruder v. Puckett</u>, 954

F.2d 313, 316 (5th Cir. 1992)).

     If the sentence is not "grossly disproportionate" in the first instance, however, the

inquiry is finished. <u>United States v. Gonzales</u>, 121 F.3d 928, 942 (5th Cir. 1997),

---

[30]Rec. Doc. No. 1-1, p. 6.

[31]<u>Id</u>. at p. 7.

overruled in part on other grounds by United States v. O'Brien, 130 S.Ct. 2169, 2180

(2010), as stated in United States v. Johnson, 398 F. Appx 964, 968 (5th Cir. 2010).  As

the Supreme Court has noted, successful proportionality challenges outside the context

of capital punishment are "exceedingly rare" and constitutional violations are sustained

in only "extreme" or "extraordinary" cases.  Ewing v. California, 538 U.S. 11, 22 (2003)

(quotation and citations omitted); Lockyer v. Andrade, 538 U.S. 63, 73, 77 (2003)

(quotation and citations omitted).

        For purposes of federal habeas review under the AEDPA standard, an excessive

sentence claim presents a question of law.  Chatman v.. Miller, No. 05–1481, 2005 WL

3588637, at *5 (E.D.La. Nov. 9, 2005); Davis v. Cain, 44 F.Supp.2d 792, 798

(E.D.La.1999); Jones v. Kaylo, No. 99–0567, 1999 WL 544680, at *1 (E.D.La. July 26,

1999).

        The sentencing range for the crime of armed robbery is set out in La. Rev. Stat. §

14:64(B), which provides:  "Whoever commits the crime of armed robbery shall be

imprisoned at hard labor for not less than ten years and for not more than ninety-nine

years, without benefit of parole, probation, or suspension of sentence."  La. Rev. Stat. §

14:64(B) (emphasis added).  Bridges's 50-year prison sentence on Count 1, at no more

than the mid-point between the mandatory minimum and the statutory maximum, was

clearly within that range.  Bridges's sentence was also in the sentencing range of 40 to

50 years in prison that the Louisiana Supreme Court has approved for those convicted

18

of armed robbery.  State v. Dunns, 441 So.2d 745, 745-46 (La. 1983) (40-year sentence for armed robbery not excessive); State v. Huntsberry, 439 So.2d 432, 433 (La. 1983) (50-year sentence for armed robbery not excessive).

Bridges's sentence was less than sentences imposed for armed robbery by some Louisiana courts.  State v. Mason, 59 So.3d 419, 429 (La. App. 5th Cir. 1/11/11) (55-year sentence for armed robbery not excessive); State v. Boyette, 768 So.2d 658, 661 (La. App. 2nd Cir. 9/27/00) (60-year sentence not excessive).  The fact that Bridges, in connection with Count 1 (armed robbery of Corporate Cleaners), did not actually enter the premises makes him no less guilty of armed robbery and no more entitled to a lesser sentence.  See State v. Martin, No. 2012-KA-1065, 2013 WL 595790, at *2 (La. App. 1st Cir. 2/15/13) (a defendant need not have actually performed the taking or hold the weapon to be just as guilty of armed robbery as the person who did the taking and held the gun).

The Louisiana habitual offender law provides, in pertinent part, that if a second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction. La. Rev. Stat. § 15:529.1(A)(1)(a). Therefore, on Count 2, Bridges faced sentencing exposure a minimum

of <u>49 1/2 years in prison to a maximum of 198 years at hard labor</u> for armed robbery as a second felony offender.

Bridges's 60-year prison sentence on Count 2, was <u>significantly less than the mid-point between the mandatory minimum and the statutory maximum</u>. Bridges's 60-year sentence on Count II, as a second offender, was less than sentences imposed by some Louisiana courts. <u>See</u> <u>State v. Roshell</u>, 966 So.2d 770 (La. App. 2nd Cir. 9/26/07) (80-year sentence as a second felony offender on an armed robbery count not excessive); <u>State v. Callier</u>, 909 So.2d 23, 33-34 (La. App. 2nd Cir. 2005) (70-year sentence as second felony offender for armed robbery not excessive). Bridges notes that his prior crime was non-violent, asserting that this fact should have been considered in lessening his sentence. However, the non-violent nature of a prior offense does not override the presumption of constitutionality when a sentence falls within the statutory range. <u>State v. Parker</u>, _ So.3d _, 2013 WL 1163515, at *7 (La. App. 4th Cir. 3/20/13) ("trial judge may not rely solely upon the non-violent nature of the instant crime or of past crimes as evidence which justifies rebutting the presumption of constitutionality").

Bridges also argues that because the victims were not "physically harmed" and he was not "particularly cruel" to the victims, he should have received a sentence lower than the 60-year sentence imposed. While Bridges is correct in his assertion that the victims were not physically harmed, the claim that he was not "particularly cruel" rings hollow given the mental injuries that the victims suffered. As the First Circuit observed:

20

[T]he offense resulted in significant permanent injury to the victim of count II. The [trial] court noted that in the PSI, the victim of count II reported that she has been in therapy for depression and anxiety, has been diagnosed with post-traumatic stress syndrome, has suffered from inability to fall asleep at night, has been unable to work, has been unable to go out in public, and has been unable, due to anxiety, to drive the vehicle stolen by the defendant. In regard to count II, the court concluded that the offense had caused significant permanent injury to the victim. The court also noted that defendant had used a dangerous weapon in the commission of count II, had been involved in other offenses, and had used a firearm or other dangerous weapon while committing or attempting to commit an offense which had as an element the use, attempted use, or threatened use of physical force against the person or property of another, and which by its very nature, involved a substantial risk that physical force would be used in the course of committing the offense.

The court noted the victim of count I had not been as specific in reporting the crime's impact on her life, but she had indicated that since the robbery, her life had changed drastically, and she no longer felt secure being alone.[32]

Generally, when a defendant, brandishing a firearm, causes a victim to fear for his or her life, the lack of physical injury does not warrant a lesser sentence. State v. Jordan, 813 So.2d 1123, 1135 (La. App. 2nd Cir. 4/3/02). See State v. Ervin, 747 So.2d 109, 115 (La. App. 2nd Cir. 9/22/99) (because defendant, during the course of the armed robberies for which he was convicted, "could have caused serious physical harm," he was not entitled to lesser sentence) (emphasis added).

Bridges has not shown that his sentences were grossly disproportionate or unconstitutionally excessive in light of the crimes for which he was convicted. The state

---

[32]St. Rec. Vol. 2 of 4, pp. 489-90.

courts' denial of relief on this issue was not contrary to established Supreme Court case law, nor was it an unreasonable application of Supreme Court precedent.  Bridges is not entitled to relief on this claim.

VII.   <u>INEFFECTIVE ASSISTANCE OF COUNSEL</u>

Bridges argues that his trial counsel was ineffective in failing to argue that his speedy trial and due process rights were violated and that the bill of information lodged against him should have been quashed.  He also argues that his trial counsel ineffectively failed to ensure that the jury instructions were proper, failed to object to prosecutorial misconduct, and fell asleep in front of the jury.  Bridges also claims that his appellate counsel was ineffective in failing to assert on direct appeal that the prosecutor acted improperly, that the bill of information lodged against him should have been quashed, and that he was prejudiced by the fact that his trial counsel fell asleep.

The issue of ineffective assistance of counsel is a mixed question of law and fact. <u>Clark v. Thaler</u>, 673 F.3d 410, 416 (5th Cir. 2012); <u>Woodfox v. Cain</u>, 609 F.3d 774, 789 (5th Cir. 2010).  Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance

22

of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687–88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' ... But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 792 (2011) (Strickland requires a "substantial" likelihood of a different result, not just a "conceivable" one.)

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999)

23

(citing Strickland, 466 U.S. at 689–90).  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial.  Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d at 236–37; Clark v. Johnson, 227 F.3d 273, 282–83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).

On habeas review, the United States Supreme Court has recently clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington, 131 S.Ct. at 788.  The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." Cullen v. Pinholster, _ U.S. _, 131 S.Ct. 1388, 1403 (2011) (quoting Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)).

24

Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466 U.S. at 689; Moore, 194 F.3d at 591. The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient. Id.

A.   SPEEDY TRIAL RIGHT

Bridges argues that his counsel was ineffective in failing to argue that his constitutional right to a speedy trial was violated due to the lapse of more than six years, from August 2002, when he was taken into custody by Orleans Parish officials, to December 2008, when he was prosecuted in the Twenty-Second Judicial District Court in St. Tammany Parish.

"The Sixth Amendment guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial.'" Vermont v. Brillon, __ U.S. __, 129 S.Ct. 1283, 1290 (2009).

Bridges's own pleadings state that "[o]n August 12, 2002, [he] was arrested in Orleans Parish for a string of robberies that went from New Orleans to Slidell [in St.

Tammany Parish] and back to New Orleans."[33]  Bridges alleges that on August 13, 2002,

while in the custody of Orleans Parish officials, St. Tammany officials questioned

Bridges regarding armed robberies in St. Tammany Parish and took taped statements

from him.[34]  Bridges wrote that he remained in the custody of Orleans Parish officials for

18 months, during which time he "went through a succession of jail placements in the

aftermath of Hurricanes Katrina and Gustav.  After two more years of postponements and

hearings, New Orleans dismissed all charges on prescription because of time delays."[35]

On November 22, 2007, Bridges was booked and arrested by St. Tammany Parish

officials.[36]   On January 2, 2008, Bridges was charged by bill of information in St.

Tammany Parish with two counts of armed robbery.  Less than a year later, on December

9, 2008, Bridges's jury trial commenced, and on December 11, 2008, he was found guilty

as charged.[37]

     Bridges's speedy trial argument is legally incorrect because, for constitutional

purposes, the applicable time delays did not commence to run on August 12, 2002, when

he was arrested by New Orleans officials, but on November 22, 2007, when St. Tammany

---

[33]Rec. Doc. No. 1-1, p. 8 of 21.

[34]Id. at p. 9 (emphasis added).

[35]Id.

[36]St. Rec. Vol. 3 of 4, Initial Booking Receipt (emphasis added).

[37]See discussion supra at pp. 2 and 4.

Parish sheriff officials arrested and detained him on the charges that he robbed two Slidell businesses on which he was convicted about a year later.  As the Supreme Court has explained:

> In <u>United States v. Marion</u>, 404 U.S. 307 . . . , this Court considered the significance, for constitutional purposes, of a lengthy <u>pre</u>indicment delay. We held that as far as the Speedy Trial Clause of the Sixth Amendment is concerned, <u>such</u> <u>delay</u> <u>is</u> <u>wholly</u> <u>irrelevant</u>, since our analysis of the language, history, and purposes of the Clause persuaded us that only <u>a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge</u> . . . engage the particular protections of [the Speedy Trial Clause].

<u>United States v. Lovasco</u>, 431 U.S. 783, 788-89 (1977) (quotation omitted) (emphasis added).

Thus, as to the St. Tammany Parish charges on which he was ultimately convicted, Bridges's speedy trial time commenced running on November 22, 2007.  Bridges was brought to trial about one year later on December 9, 2008.  The Supreme Court has set no hard and fast rule as to how much time must elapse before a speedy trial violation occurs.  Instead, the Court has stated that the amount of time required to constitute a violation of a defendant's right to a speedy trial is "amorphous," "slippery" and "necessarily relative." <u>Brillon</u>, 129 S.Ct. at 1290 (quotations omitted).  The Supreme Court has specifically "refused to quantif[y] the right into a specified number of days or months . . . ." <u>Id</u>. (quoting <u>Barker v. Wingo</u>, 407 U.S. 514, 529-30 (1972) (brackets in original)).

27

In <u>Brillon</u>, the Court rejected "inflexible approaches" to evaluating speedy trial claims and reiterated the "balancing test" it had previously established in <u>Barker</u> "in which the conduct of both the prosecution and the defendant are weighed . . . . '[S]ome of the factors that courts should weigh include '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" 129 S.Ct. at 1290 (quoting <u>Barker</u>, 407 U.S. at 529-30). In <u>Brillon</u>, the Supreme Court disagreed with and <u>reversed</u> a finding by the Vermont Supreme Court that a three-year delay between charges and trial violated defendant's speedy trial rights, where much of the delay was attributable to defendant's own disruptive conduct and the inability of his counsel to move it forward. 129 S.Ct. at 1291-92. In <u>Lovasco</u>, the Supreme Court reversed the lower federal courts' dismissal of charges against a defendant, finding that an 18-month delay between his indictment and the time defendant "had admitted to Government agents" many of the facts constituting the offense and "agents had developed strong evidence linking" defendant to other offenses did <u>not</u> violate defendant's speedy trial or due process rights. 97 S.Ct. at 2046, 2048, 2052. Similarly, in <u>Marion</u>, the Supreme Court <u>reversed</u> a lower court's dismissal of an indictment for lack of speedy prosecution, finding no violation of defendant's speedy trial or due process rights in a three-year delay between indictment and commission of the offenses. 92 S.Ct. at 466. Finally, in <u>Barker</u>, the Supreme Court held that a five-year delay between arrest and trial did not violate defendant's speedy trial rights. 92 S.Ct. at 2193-95.

28

Thus, the Supreme Court has set no particular time period during which a defendant must be brought to trial after formally being charged with particular offenses. In his St. Tammany Parish case, Bridges experienced a delay of 382 days from being charged to trial.  This delay of slightly more than one year from charge to trial was in no way unreasonable.  The delay was far less than those approved by the Supreme Court in the cases cited above.  The reason for the delay was apparently in part to permit Orleans Parish authorities to complete their determination of whether Bridges should be charged and tried in Orleans Parish before proceedings commenced in St. Tammany and in part to address the disruptions caused by Hurricane Katrina. No discernible prejudice to defendant's ability to prepare his defenses can be gleaned from this record.  Under these circumstances, Bridges's right to a speedy trial was not violated, and it would have been futile for his counsel to move for dismissal or make an argument on that ground.

Similarly, Bridges's contentions that his counsel was ineffective in failing to challenge the timeliness of his prosecution based on La. Code Crim. P. art. 578, and failing to move to quash the bill of information on that basis are also meritless.  Under La. Code Crim. P. art. 578, the State "must commence trial within two years from the date of institution of the prosecution in non-capital felony cases.  The date of institution of prosecution is the date when the indictment is returned or the bill of information is filed."  State v. Watts, 738 So.2d 628, 629 (La. App. 5th Cir. 1999) (citing State v. Gladden, 257 So.2d 388 (1972), cert. denied, 410 U.S. 920 (1973)).  Because Bridges

29

was tried about a year after the bill of information was filed against him, there was no violation of Article 578 and it would have been futile for counsel to raise such an argument.[38]

Counsel cannot be ineffective for failing to pursue a futile course of action. United States v. Manley, No. 10-1053, 2011 WL 2259761, at *3 (E.D. Pa. 2011); see Lindsey v. Cain, 267 Fed. Appx. 374, at *1 (5th Cir. 2008) (counsel is not ineffective by failing to raise frivolous or futile claims) (citing Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir. 2002)).  Thus, Bridges's assertion that his counsel was ineffective in failing to assert the foregoing arguments is without merit, and federal habeas relief on these ineffective assistance grounds is unwarranted.

B.      JURY INSTRUCTION

Bridges also argues that his trial counsel was ineffective in failing to ensure that the trial court gave proper jury instructions.  Bridges contends that the jury instructions were insufficient because the instructions "did not include a charge to consider the voluntariness of statements made by [Bridges] while in police custody."[39]

---

[38]Counsel did raise the argument that Bridges's bill of information should be quashed under the provisions of La. Code of Crim P. art. 572, because the State was required to initiate its prosecution no later than six years after the offense is committed. See St. Rec. Vol. 1 of 4, p. 56. This argument was without merit since, as explained above, Bridges's prosecution was initiated on January 2, 2008, when the bill of information was filed. As such, the prosecution was initiated within the required six-year time period.

[39]Rec. Doc. No. 1-1, p. 13.

> Alleged error in a state trial court's instructions is cognizable in a federal habeas petition only when a petitioner proves that the error by itself so infected the entire trial that the resulting conviction violated due process. Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736-37, 52 L.Ed.2d 203 (1977).  An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law.  Id. at 155, 97 S.Ct. at 1737.

Polk v. Quarterman, No. 4:06-776-A, 2007 WL 4292078, at *4 (N.D. Tex. Dec. 6, 2007).

Bridges complains that "the jury should have been instructed that, as the triers of fact, they must determine the voluntariness of [Bridges's] statements at the hands of police."[40] A review of the jury instructions contained in the state court record, however, reflects that the trial court did in fact provide such an instruction, stating:

> In determining the weight or value to be accorded in a statement made by the defendant, you should consider all the circumstance[s] under which the statement was made.  In making that determination, you should consider whether the statement was made freely, voluntarily, without the influence of fear, duress, threats, intimidation, inducement or promises.[41]

Bridges provides no suggestion as to what additional instruction the court should have provided.  More significantly, Bridges has not shown that the jury instruction given by the trial court was itself constitutionally deficient or violated any clearly established federal law.  See Polk, 2007 WL 4292078, *4 n. 4 (habeas relief denied where trial court instructed jury on general admissibility of a defendant's statements and petitioner failed to show that such an instruction was violative of federal law). Under these circumstances,

---

[40]Id. at p. 14.

[41]St. Rec. Vol. 2 of 4, p. 458 (emphasis added).

counsel cannot conceivably be deemed to have been ineffective when the alleged missing instruction was in fact given.  Accordingly, I find that Bridges is not entitled to relief on this claim.

C.    PLAYING TAPED CONFESSION TWICE

Bridges argues that it was prosecutorial misconduct to twice play his taped inculpatory statements to the jury.  Although Bridges frames this argument in terms of prosecutorial misconduct, he also argues that his counsel performed ineffectively in failing to object to the playing of the tape. Thus, Bridges's argument, construed broadly, is that his counsel was ineffective both in failing to object to the prosecutor's misconduct and to assert an evidentiary objection to the playing of the tape.

Two officers, Sergeant Bobby Campbell and Detective Vaughn Whitehead, were present when Bridges confessed to the armed robberies,[42] and his confession was tape-recorded.  At trial, portions of Bridges's taped statements were played for the jury twice, once in its entirety during the prosecutor's direct examination of Campbell during the State's case-in-chief, and another time when parts were played during the prosecutor's cross-examination of Whitehead in defendant's case.[43]  Bridges complains that the second playing was prosecutorial misconduct and that his counsel was ineffective in failing to object to the second playing of his statements.

---

[42]Id., p. 433.

[43]Id., pp. 418 and 440-42.

It cannot be concluded that counsel's trial performance fell below an objective standard of reasonableness or that the result of the state court proceedings against Bridges would have been different if counsel had somehow precluded the second playing of portions of the tape.

As a threshold matter, the second playing of portions of the tape did <u>not</u> constitute prosecutorial misconduct. A prosecutor's conduct does not present a claim of constitutional magnitude in a federal habeas action unless it is so prejudicial that the trial was rendered fundamentally unfair in violation of the Due Process Clause. <u>Jones v. Butler</u>, 864 F.2d 348, 356 (5th Cir. 1988). The relevant question is whether the prosecutors' conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986) (citations and quotations omitted); <u>accord</u> <u>Rogers v. Lynaugh</u>, 848 F.2d 606, 608 (5th Cir. 1988); <u>Bell v. Lynaugh</u>, 828 F.2d 1085, 1095 (5th Cir. 1987). The prosecutor's conduct must be evaluated in the context of the entire trial. <u>Greer v. Miller</u>, 483 U.S. 756, 765-66 (1987) (citing <u>Darden</u>, 477 U.S. at 179); <u>Kirkpatrick v. Blackburn</u>, 777 F.2d 272, 281 (5th Cir. 1985). A habeas corpus petitioner "must demonstrate that the misconduct [was] persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the" alleged misconduct. <u>Jones</u>, 864 F.2d at 356; <u>accord</u> <u>Hogue v. Scott</u>, 874 F. Supp. 1486, 1533 (N.D. Tex. 1994). Under this test, a petitioner must demonstrate that prosecutorial

33

misconduct rendered his trial "fundamentally unfair," by showing "a reasonable probability that the verdict might have been different had the trial been properly conducted." Rogers, 848 F.2d at 609 (footnote and citations omitted).

The prosecutor's second playing of only portions of the tape during cross-examination of a witness presented by defendant in his case-in-chief was neither persistent nor pronounced, and it did not affect the trial outcome in a fundamentally unfair way. First, the trial judge had already specifically ruled that the tape should be both admitted into evidence and published to the jury.[44] Once in evidence and published to the jury, the prosecutor was free to use the material and the jurors were free to review it as they saw fit. Any objection by defense counsel to the jury hearing material that was in fact already in evidence would have been futile.

Second, the other evidence of guilt against Bridges, even absent the second playing of portions of his taped statements, was substantial. The jury had heard the confession once already, played in connection with Sergeant Bobby Campbell's testimony. In addition, the jury heard testimony that Bridges was driving the vehicle that had been stolen following the Burger King robbery. Detective Ralph Morel with the Slidell Police Department[45] testified that in his investigation of the Burger King robbery he had learned that the manager's vehicle was stolen. Thereafter, police ascertained the

---

[44]St. Record Vol. 2 of 4, Trial Transcript at pp. 416-17.

[45]Id., p. 344.

make, model, color and license number of the vehicle, a green Mazda van.[46]  On the next day, police "observed the van that was owned by the victim in the Burger King incident."[47]  At that point, the vehicle was stopped, Detective Morel approached the vehicle, saw the driver of the vehicle and positively identified him as Eric Bridges.[48] There was no doubt in Detective Morel's mind that Bridges was the driver of the victim's van.[49]  Bridges was also identified as the robber by a Burger King employee who was the victim, a bag used in the robbery was recovered in the van, and Bridges's shoes matched a partial print found at the scene of the robbery.  This was ample evidence supporting Bridges's conviction, apart from the second playing of portions of his taped confession.

Significantly, the record is clear that Bridges's trial counsel did <u>not</u> fail to contest the admissibility of Bridges's taped statements.  Before the trial, defense counsel filed a written motion to suppress the confession.[50]  A full-blown hearing addressing the motion to suppress was conducted on the day after the trial jury was selected, before opening statements on the morning of commencement of the trial itself.[51]  At the conclusion of the hearing, the state trial judge denied the motion to suppress.  "Note our

---

[46]<u>Id</u>., p. 371.

[47]<u>Id</u>., p. 372.

[48]<u>Id</u>., p. 373.

[49]<u>Id</u>. at p. 374.

[50]St. Record Vol. 1 of 4, Motion to Suppress the Confession, May 15, 2008.

[51]<u>Id</u>., Trial Transcript at p. 242; State Record Vol. 2 of 4, Trial Transcript at pp. 247-273.

objection to the court's ruling, Your Honor," was defense counsel's response.[52]  Opening

statements were made shortly thereafter, with defense counsel highlighting his argument

that the jury should discount Bridges's statements on grounds that they were not

"willingly made."[53]  Under these circumstances, defense counsel clearly contested the

prosecutor's use of the statements, and it would have been futile to continue to object to

its use when the motion to suppress had just been denied and defense counsel's objection

specifically noted.

Given the deference to which counsel's trial performance is entitled, I find that the

state courts' rejection of Bridges's claim that counsel was ineffective in failing to object

to the second playing of his confession, is not an unreasonable application of Supreme

Court law.  Bridges's claim in this regard is without merit.

D.    SOMNOLENT COUNSEL

Bridges complains that his counsel "fell asleep during voir dire of the jury and

during the State's opening statements."[54]  Bridges asserts that counsel's "inattentiveness"

facilitated the prosecution's "misconduct" and "gave jurors the impression that the

defense had a weak case and could not win."[55]

---

[52]Id. at p. 273.

[53]Id. at p. 300.

[54]Rec. Doc. No. 1-1, p. 17.

[55]Id. at p. 18.

36

A lawyer who falls asleep during a criminal trial commits a serious breach of his obligations both to his client and to the Constitution, which all lawyers swear to uphold. Whether this serious breach committed by a somnolent lawyer warrants federal habeas corpus relief upsetting the results of an otherwise constitutionally sufficient state criminal proceeding, however, depends upon the particular circumstances and must be carefully evaluated beyond any initial abhorrent knee-jerk reaction.

In Burdine v. Johnson, 262 F.3d 336 (5th Cir. 2001), the en banc Fifth Circuit considered the federal habeas petition of a Texas state inmate who had been convicted of capital murder and sentenced to death.  The district court granted the petition, and the Fifth Circuit affirmed, finding that Burdine's lawyer "was repeatedly asleep, and hence unconscious, as witnesses adverse to Burdine were examined and other evidence against Burdine was introduced" during the guilt-innocence phase of the trial. Id. at 349 (emphasis added). The evidence established that Burdine's lawyer had "repeatedly dozed or slept as the State questioned witnesses and presented evidence supporting its case" against him. Id. at 339. Witnesses testified that they saw defense counsel sleeping "between two and five times while the prosecuting attorney questioned witnesses" and "as many as ten times during the trial," including "for long periods of time during the questioning of witnesses."  Id. The Fifth Circuit characterized the sleeping of Burdine's counsel as "consistent unconsciousness" and stated: "[W]e conclude that a defendant's Sixth Amendment right to counsel is violated when that defendant's counsel is repeatedly

unconscious through not insubstantial portions of the defendant's capital murder trial. Under such circumstances, . . . we presume that the Sixth Amendment violation prejudiced the defendant."  Id. at 341 (emphasis added).

The Fifth Circuit cautioned, however, that every incident of sleeping trial counsel does not prompt federal habeas relief. ""[W]e decline to adopt a per se rule that any dozing by defense counsel during trial merits a presumption of prejudice.  Our holding, that the repeated unconsciousness of Burdine's counsel through not insubstantial portions of the critical guilt-innocence phase of . . . trial warrants a presumption of prejudice, is limited to the egregious facts found by the state habeas court in this case."  Id. at 349 (emphasis added).

In Bridges's case, the trial transcript reflects that counsel dozed off once, and only during voir dire, while the prosecutor was asking whether jurors understood the "concept of principals."[56]  When no voir dire member responded, counsel stated:

> [W]hat I want to do is I am going to, first of all, read you the definition of principal out of this book, and I know that, for the most part, that is not going to be terribly enlightening, so then after I do that, we are going to talk a little bit about what principals are, and we might even use a hypothetical or scenario that helps demonstrate what principal means. This is the definition of principals out of the law.[57]

---

[56]St. Rec. Vol. 1 of 4, p. 150.

[57]Id.

It was at that point that defense counsel was roused.

> THE COURT:
> > Excuse me a second.
> > Mr. Talley?
> (No response.)
> THE COURT:
> > Mr. Talley?
> MR. TALLEY:
> > I am sorry.
> THE COURT:
> > Approach the bench.
> (At this time, a discussion was held at the bench.)
> THE COURT:
> > Jim you were asleep there.
> MR. TALLEY:
> > I am fine, Your Honor.  I won't let it happen again.
> THE COURT:
> > Okay.  Now your client has been looking at you, trying to speak to you even, Jim.
> MR. TALLEY:
> > I will make sure it doesn't happen again.  I apologize to the Court, Your Honor.
> THE COURT:
> > Okay.
> MR. TALLEY:
> > I was looking at my notes and just drifted off for a second.
> THE COURT:
> > Yes, sir.
> > (End of bench conference.)
> THE COURT:
> > Proceed.[58]

Although Bridges also asserts that his lawyer fell asleep again during opening

statements, no evidence supports that allegation, and the trial transcript reflects no such

---

[58]Id. at pp. 150-51.

second incident of sleeping.  These circumstances of dozing counsel are nothing like the egregious, repeated sleeping equaling prolonged unconsciousness described in <u>Burdine</u>. While Burdine's counsel was asleep for long periods of time as witnesses "adverse to Burdine were examined and other evidence against Burdine was introduced," <u>Burdine</u>, 262 F.3d at 349, Bridges's counsel dozed once, and only briefly, during an inconsequential part of voir dire during which the prosecutor waxed professorially about a point of law.

        In the instant case, defense counsel did not doze repeatedly during a critical stage of the trial.  There is no evidence or even suggestion that he slept while adverse witnesses and evidence were being presented against Bridges.  Instead, counsel nodded off during the relatively mundane process of the prosecutor explaining rudimentary legal elements to prospective jurors during voir dire. Defense counsel was not virtually unconscious. Trial lasted three days and counsel dozed for only a small portion of voir dire, before any testimony or evidence presentation began.

        Under these circumstances, I find that the state courts' rejection of Bridges's claim that he was denied effective counsel due to the fact that his counsel dozed through a portion of voir dire, does not present an unreasonable application of federal law to the facts of this case.  Bridges's case does not present anything approaching the "egregious facts" described in <u>Burdine</u>.  The instant claim does not merit federal habeas corpus relief.

E.      DIRECT APPEAL

Bridges complains that his appellate counsel was ineffective in failing to raise the following claims: (1) Prosecutorial misconduct in the prosecutor twice playing to jurors Bridges's taped confession. (2) Trial counsel improperly argued his motion to quash the bill of information, and appellate counsel should have argued the issue properly on appeal.  (3) His trial was tainted by the fact that counsel fell asleep.

Like claims alleging ineffective of trial counsel, claims of ineffective appellate counsel are analyzed under the two-pronged Strickland analysis requiring that a petitioner demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense.  To establish prejudice resulting from appellate counsel's performance, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation. Smith v. Robbins, 528 U.S. 259, 286 (2000); Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001). Therefore, a petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error. Briseno, 274 F.3d at 210.

None of the arguments that Bridges alleges should have been asserted by his counsel on direct appeal have merit because it is clear that none of them would have resulted in reversal of the trial court's judgment.  Bridges was not entitled to have his bill

41

of information quashed under either La. Code Crim. P. arts. 572 or 578.  For the same reasons discussed above, no prosecutorial misconduct occurred, and Bridges's trial was not tainted when his counsel fell asleep briefly during voir dire.  Bridges has failed to sustain his burden.  Given the strong evidence of his guilt, Bridges suffered no prejudice resulting from any of these factors.  The instant claim is without merit and fails to warrant federal habeas corpus relief.  The state courts's denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court precedent.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that the petition of Eric Bridges for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v.

<u>United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[59]

New Orleans, Louisiana, this ___2nd___ day of May, 2013.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[59]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

43