## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ERIC BRIDGES**                                             **CIVIL ACTION**

**VERSUS**                                                   **NO.  12-2684**

**N. BURL CAIN, WARDEN**                                     **SECTION "G" (2)**

### ORDER AND REASONS

Before the Court are Petitioner Eric Bridges's ("Petitioner") objections[1] to the May 2, 2013, Report and Recommendation of the United States Magistrate Judge assigned the case.[2] Petitioner, a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana, filed a petition for a Writ of *Habeas Corpus* under 28 U.S.C. § 2254.[3] Petitioner argues that his sentence was excessive.[4]  He also contends that his trial counsel and appellate counsel were ineffective.[5] The Magistrate Judge recommends that the matter be dismissed with prejudice.[6]  Petitioner objects to each of the findings of the Magistrate Judge.[7] After reviewing the petition, the Magistrate Judge's Report and Recommendation, the objections, the record, and the applicable law, the Court will overrule Petitioner's objections, adopt the Magistrate Judge's recommendation and dismiss this action with prejudice.

---

[1] Rec. Doc. 13.

[2] Rec. Doc. 14.

[3] Rec. Doc. 1.

[4] *Id*. at 5.

[5] *Id*. at 6–11.

[6] Rec. Doc. 13 at 42.

[7] Rec. Doc. 14.

# I. Background

## A. Factual Background

Petitioner was charged by bill of information in St. Tammany Parish on January 2, 2008, with two counts of armed robbery,[8] and his trial commenced on December 9, 2008.[9] On December 11, 2008, the jury found Petitioner guilty of two counts of armed robbery.[10] The trial court sentenced Petitioner to fifty years in prison on Count 1 and sixty years in prison on Count 2.[11]

On October 27, 2009, the Louisiana First Circuit Court of Appeal affirmed Petitioner's convictions and sentences.[12] On April 23, 2010, the Louisiana Supreme Court denied Petitioner's writ of certiorari.[13] Petitioner's convictions became final on July 22, 2010, when he did not file a writ of certiorari with the United States Supreme Court.[14]

On August 23, 2010, Petitioner submitted an application for post-conviction relief to the state trial court asserting that his trial counsel and appellate counsel were ineffective.[15] On October 8, 2010, the state trial court denied the application finding that "defendant's claims [had] no merit and fail[ed] to meet either of the requirements of *Strickland v. Washington*."[16] Petitioner's related writ

---

[8]  State Rec. Vol. I of IV, Felony Bill of Information at 30 (Jan. 2, 2008).

[9] State Rec. Vol. I of IV, Trial Transcript at 105.

[10] State Rec. Vol. II of IV, Trial Transcript at 473–74.

[11] State Rec. Vol. I of IV, Trial Transcript at 490.

[12] *State v. Bridges*, 09-886 (La. App. 1 Cir. 10/27/09); State Rec. Vol. III of IV.

[13] *State v. Bridges*, 09-2490 (La. 4/23/10); 34 So. 3d 269; State Rec. Vol. III of IV.

[14] Petitioner's Louisiana Supreme Court application was denied April 23, 2010, and under *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999), a judgment becomes final by the conclusion of direct review, which includes the time for filing a certiorari petition in accordance with 28 U.S.C. § 2244(d)(1)(A).

[15] State Rec. Vol. IV of IV, Uniform Application for Post-Conviction Relief (Aug. 23, 2010).

[16] State Rec. Vol. IV of IV, Trial Court Order (Oct. 8, 2010) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).

application was then denied by the Louisiana First Circuit Court of Appeal on February 22, 2011.[17] The Louisiana First Circuit Court of Appeal denied on the merits Petitioner's "failure to raise speedy trial" and "failure to object to prosecutorial misconduct" claims, and denied the other claims on procedural grounds for "fail[ing] to include pertinent documents from the district court record."[18] Petitioner's related writ application was denied by the Louisiana Supreme Court on January 20, 2012.[19]

On or about November 2, 2012, Petitioner filed an application for federal *habeas corpus* relief.[20] Petitioner argued his sentences were statutorily and constitutionally excessive.[21] Petitioner also argued his trial counsel was ineffective because he: (1) failed to raise speedy trial and due process violations; (2) failed to ensure that proper jury instructions were provided; (3) failed to object to prosecutorial misconduct; and (4) fell asleep on several occasions.[22] Finally, Petitioner argued his appellate counsel was ineffective for failing to raise the following issues on appeal: (1) prosecutorial misconduct; (2) trial counsel's improper arguing of the motion to quash the bill of information; and (3) trial counsel falling asleep.[23] In response, the State argued that the petition was not timely filed, that he failed to exhaust state remedies, and that his claims were nonetheless

---

[17] *State v. Bridges*, 10-2003 (La. App. 1 Cir. 2/22/11); State Rec., Vol. III of IV.

[18] *Id.* The Louisiana First Circuit granted Petitioner leave to file a new application before April 11, 2011. *Id.* Petitioner did not file a new application with the Louisiana First Circuit.

[19] *State ex rel. Bridges v. State*, 11-605 (La. 1/20/12 ); State Rec., Vol. III of III.

[20] Rec. Doc. 1.

[21] *Id.* at 5.

[22] *Id.* at 6–10.

[23] *Id.* at 10–11; Rec. Doc. 1-1 at 19–20.

without merit.[24]

### B. Report and Recommendation Findings

On May 2, 2012, the Magistrate Judge recommended that the petition be dismissed with prejudice.[25] First, the Magistrate Judge addressed the State's claim that the petition was untimely.[26] The Magistrate Judge noted that the time limitations period set forth in the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a one-year statute of limitations for the filing of *habeas corpus* applications after the underlying judgment becomes "final."[27] Petitioner's conviction was final on July 22, 2010, which would render his November 9, 2012 federal *habeas corpus* petition untimely unless he qualified for equitable tolling or statutory tolling.[28] The Magistrate Judge found that Petitioner offered no basis for equitable tolling.[29] However, the Magistrate Judge determined that Petitioner was entitled to statutory tolling under 28 U.S.C. § 2244(d)(2), which provides statutory tolling for "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."[30] The Magistrate Judge rejected the State's argument that Petitioner's October 27, 2010 post-conviction application to the appellate court was not properly filed, noting that because two claims were decided on the merits, the "proper filing" requirement under § 2244(d)(2) was met, and

---

[24] Rec. Doc. 11.

[25] Rec. Doc. 13 at 42.

[26] *Id*. at 9

[27] *Id*.

[28] *Id.* at 10.

[29] *Id.* at 11.

[30] *Id*. at 11–13 (citing 28 U.S.C. § 2244(d)(2)).

the statute of limitations was interrupted.[31] Therefore, the Magistrate Judge concluded that the statute of limitations remained tolled throughout Petitioner's post-conviction proceedings, until January 20, 2012, when the Louisiana Supreme Court denied Petitioner's writ application.[32]

The Magistrate Judge addressed the State's argument that Petitioner had not exhausted all claims in state court.[33] The Magistrate Judge addressed the claims without requiring full exhaustion, noting that all of Petitioner's claims were without merit.[34]

The Magistrate Judge addressed Petitioner's claim that his sentences were excessive because on Count 1 of the Corporate Cleaners armed robbery, he never went inside the dry cleaners, and on Count 2 of the Burger King robbery, he did not physically harm any of the victims and his prior conviction upon which second offender status was based was a non-violent cocaine possession charge.[35] The Magistrate Judge recommended that the claim be denied because Petitioner failed to prove that his sentences were grossly disproportionate or unconstitutionally excessive.[36]

The Magistrate Judge then rejected Petitioner's claim that his trial counsel was ineffective in failing to argue speedy trial and due process violations.[37] Petitioner based his claim on his initial Orleans Parish arrest on August 12, 2002, but the Magistrate Judge found November 22, 2007, the date Petitioner was arrested by St. Tammany Parish officials to be the actual date of arrest, which

---

[31] *Id.*

[32] *Id.* at 12–13.

[33] *Id.* at 13–14.

[34] *Id.* at 13–14 (citing 28 U.S.C. § 2254(b)(2)) ("An application for a writ of habeas corpus  may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

[35] *Id.* at 17.

[36] *Id.* at 21–22.

[37] *Id.* at 30.

was followed by the filing of the Bill of Information two months later.[38] The Magistrate Judge found that Petitioner's Sixth Amendment and Due Process rights were not violated because he was brought to trial approximately one year after the November 22, 2007 arrest.[39]

The Magistrate Judge found Petitioner's allegation that his trial counsel failed to ensure proper jury instructions were provided without merit.[40] Petitioner argued that the jury instructions "did not include a charge to consider the voluntariness of statements made by [the Petitioner] while in police custody."[41] The Magistrate Judge reviewed the trial court's jury instruction, finding that the court did in fact instruct the jury to consider Petitioner's voluntary statements, and concluded that Petitioner was not entitled to relief under that claim.[42]

Next, the Magistrate Judge found no merit in Petitioner's claim that trial counsel was ineffective in failing to object to prosecutorial misconduct.[43] Petitioner broadly based his prosecutorial misconduct claim on the fact that the prosecutor played Petitioner's taped confession twice and that his trial counsel failed to object.[44] The Magistrate Judge found that the second playing of a portion of Petitioner's taped confession was neither persistent nor pronounced, and there was ample evidence to prove Petitioner's guilt absent the second playing of the tape.[45] The Magistrate

---

[38] *Id.* at 26–27.

[39] *Id.* at 29–30.

[40] *Id.* at 31–32.

[41] *Id.* at 30.

[42] *Id.* at 31–32.

[43] *Id.* at 32.

[44] *Id.*

[45] *Id.* at 33–34 (quoting *Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988).

Judge also noted that trial counsel had filed a motion to suppress the taped confession.[46]

The Magistrate Judge then rejected Petitioner's claim that trial counsel was ineffective for falling asleep on several occasions.[47] Petitioner alleged that trial counsel fell asleep during the *voir dire* of the jury and opening statements, which facilitated the prosecutorial misconduct.[48] The Magistrate Judge reviewed the record, found that trial counsel only fell asleep during an inconsequential part of *voir dire*, and concluded that the instant claim did not merit federal *habeas corpus* relief.[49]

Finally, the Magistrate Judge found that Petitioner's claims regarding ineffective appellate counsel without merit because none of the issues alleged would have resulted in reversal of the trial court's judgment.[50] Petitioner claimed that his appellate counsel was ineffective for failing to raise prosecutorial misconduct, trial counsel's improper handling of the motion to quash the bill of information, and trial counsel's sleeping during trial.[51] The Magistrate Judge found that Petitioner failed to establish that "but for his counsel's deficient representation," the appellate court would have vacated or reversed the trial court judgment.[52]

---

[46] *Id.* at 36.

[47] *Id.*

[48] *Id.*

[49] *Id.* at 40.

[50] *Id.* at 41.

[51] *Id.*

[52] *Id.* (citing *Smith v. Robbins*, 528 U.S. 259, 286 (2000)).

## II. Objections

### A. Petitioner's Objections

Petitioner timely filed his objections to the Magistrate Judge's Report and Recommendation on May 20, 2013.[53] Petitioner objects to the Magistrate Judge's finding that his sentences were not excessive.[54] Petitioner reasserts that there was no evidence that he physically harmed or was particularly cruel to anyone during the Burger King robbery.[55] Petitioner contends that he was adjudicated as a second offender based on a non-violent offense.[56]

Petitioner argues that his trial counsel's ineffective investigation, development, presentation of mitigating evidence, and failure to raise speedy trial violations merited relief.[57] He asserts that five years and four months elapsed between his arrest and booking, which he contends was an unconstitutional delay in his right to a speedy trial.[58] Petitioner argues that the Court must analyze a violation of the Sixth Amendment using the four factors established by *Barker v. Wingo*.[59] Petitioner argues the substantial time delay is unwarranted because St. Tammany Parish officials knew of his location at all times.[60]

Petitioner also contends the trial court erred in its instruction to the jury regarding

---

[53] Rec. Doc. 14.

[54] *Id*. at 8.

[55] *Id.* at 11.

[56] *Id.*

[57] *Id.* (relying on *Wiggins v. Smith*, 539 U.S. 510, 532–33 (2003) (finding counsel's failure to expand investigation of petitioner's life history for mitigating evidence beyond the pre-sentence investigation report and department of social services records fell short of professional standards)).

[58] *Id.* at 14–15.

[59] *Id.* at 15 (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

[60] *Id.* at 17.

Petitioner's voluntary confession.[61] Petitioner asserts that the trial judge should have included a comment that Petitioner cooperated with law enforcement because he wanted "his faith to be left in the minds and hearts of the jury."[62] Petitioner reasserted his ineffective assistance of counsel claims regarding failure to object to prosecutorial misconduct and trial counsel's sleeping during *voir dire*.[63]

Petitioner also reiterated his claim asserting ineffective appellate counsel for failure to raise on appeal issues related to prosecutorial misconduct, trial counsel's improper arguing of his motion to quash the bill of information, and that Petitioner was prejudiced by trial counsel's sleeping during *voir dire*.[64]

### B. State's Response

The State of Louisiana did not file a brief in opposition to Petitioner's objections despite receiving electronic notice of the filing on May 20, 2013.

### III. Standard of Review

### A. Review of the Magistrate Judge's Report and Recommendation

In accordance with Local Rule 73.2, this case was referred to the Magistrate Judge to provide a Report and Recommendation. A District Judge "may accept, reject, or modify the recommended disposition" of a Magistrate Judge on a dispositive matter.[65]  The District Judge must "determine *de novo* any part of the [Report and Recommendation] that has been properly objected to." A District

---

[61] *Id.* at 18.

[62] *Id.* at 18–20.

[63] *Id.* at 20–24.

[64] *Id.* at 24–26.

[65] Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

Court's review is limited to plain error of parts of the report which are not properly objected to.[66]

## B. Standard of Review Under the AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") limits the power of federal courts to grant Writs of *Habeas Corpus* in cases where a state court has adjudicated the petitioner's claim on the merits.[67]

Under 28 U.S.C. § 2254(d)(1), a federal court must defer to the state court's decision as to questions of law and mixed questions of law and fact unless it "was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court."[68] The Supreme Court has made a distinction between the application of the "contrary to" and "unreasonable application" clauses.[69] A federal *habeas* court may issue the writ under the "contrary to" clause if the state court applies a rule in a way that is inconsistent with governing law and Supreme Court precedent on identical facts; a federal *habeas* court may issue the writ under the "unreasonable application" clause if the state court unreasonably applies the governing law to the facts of the case.[70]

Under 28 U.S.C. § 2254(d)(2), factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."[71]

---

[66] *See Douglas v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

[67] *See Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

[68] 28 U.S.C. §2254(d)(1).

[69] *See Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 403-404, (2000)).

[70] *Id.*

[71] 28 U.S.C. §2254(d)(2); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

### IV. Law and Analysis

**A.** *Excessive Sentence*

Petitioner objects to the Magistrate Judge's conclusion that his sentences were not excessive. He argues that his sentences were excessive because he did not physical harm anyone during the commission of his robberies, and the conviction supporting his second-time offender status was not a violent crime.

If a sentence is within the statutory limits, a federal *habeas* court will not upset the sentence unless it is grossly disproportionate to the gravity of the offense.[72] If the sentence is not grossly disproportionate to the crime, the inquiry is finished.[73] However, "when a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court weighs: (1) the gravity of the offense relative to the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same offense in other jurisdictions.[74]

Under Louisiana law, the sentencing range for the crime of armed robbery is imprisonment at "hard labor for not less than ten years and for not more than ninety-nine years, without the benefit of parole, probation, or suspension of sentence."[75] Petitioner's fifty year sentence for Count 1 is at the mid-point between the mandatory minimum and statutory maximum sentence. Further, the

---

[72] *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991).

[73] *United States v. Gonzales*, 121 F.3d 928, 942 (5th Cir. 1997).

[74] *Smallwood v. Johnson*, 73 F.3d 1343, 1347 (5th Cir. 1996) (citing *Harmelin v. Michigan*, 501 U.S. 957, 1005 (1991)).

[75] LA. REV. STAT. § 14:64(B).

Louisiana Supreme Court has held that a fifty year sentence for armed robbery was not excessive.[76]

The Louisiana habitual offender law provides that "[i]f the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction."[77] Accordingly, on Count 2 Petitioner faced a minimum sentence of forty-nine and one-half years and a maximum sentence of 198 years at hard labor. Petitioner's sixty year prison sentence on Count 2 was significantly less than the mid-point between the mandatory minimum and the statutory maximum. Thus, in addition to being within the statutory limits, the Petitioner's sentences are not grossly disproportionate to the crime committed.

Petitioner contends that because his second offender status was predicated on a non-violent crime and the victims were not physically harmed, his sentence should have been reduced. The non-violent nature of a prior offense, however, does not override the presumption of constitutionality when a sentence falls within the statutory range.[78]

Finally, Petitioner argues his sentences were excessive because he did not physical harm anyone during the commission of the robberies. Louisiana courts have noted that when a defendant, brandishing a firearm, causes a victim to fear for his or her life, the lack of physical injury does not

---

[76] *State v. Huntsberry*, 439 So. 2d 432, 433 (La. 1983).

[77] LA. REV. STAT § 15:529.1(A)(1).

[78] *State v. Johnson*, 97-1906 (La. 3/4/98); 709 So. 2d 672, 676 ("[C]ourts have the power to declare a sentence excessive under Article I, Section 20 of the Louisiana Constitution, although it falls within the statutory limits provided by the Legislature . . . A trial judge may not rely solely upon the non-violent nature of the instant crime or of past crimes as evidence which justifies rebutting the presumption of constitutionality.").

warrant a lesser sentence.[79] During Petitioner's sentencing, the trial court noted Petitioner used a dangerous weapon during the robbery charged in Count 2, and the victim reported depression and anxiety following the robbery.[80] Accordingly, Petitioner is not entitled to relief under this claim because the imposed sentences were not grossly disproportionate to the crime. Upon *de novo* review, the Court finds Petitioner's claim without merit.

## B. *Ineffective Assistance of Trial Counsel*

Petitioner objects to the Magistrate Judge's finding that his defense counsel did not deprive him of his Sixth Amendment right to a fair trial. Petitioner argues that his trial counsel was ineffective for failing to raise a Sixth Amendment/Due Process violation, failing to ensure proper jury instructions were provided, failing to object to prosecutorial misconduct, and for falling asleep on several occasions. To succeed on such a claim, a petitioner must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense.[81] If a court finds that a petitioner fails on either of these two prongs it may dispose of the ineffective assistance claim without addressing the other prong.[82]

To satisfy the deficient performance prong, a petitioner must overcome a strong presumption that the counsel's conduct falls within a wide range of reasonable representation.[83] Petitioner must show that the conduct was so egregious that it failed to meet the constitutional minimum guaranteed

---

[79] *State v. Jordan*, 35-643(La. App. 2nd Cir. 4/3/02); 813 So. 2d 1123, 1135.

[80] State Rec. Col. II of IV, Transcript of February 26, 2009 sentencing.

[81] *Strickland v. Washington*, 466 U.S. 668, 697 (1984).

[82] *Id.* at 697.

[83] *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

by the Sixth Amendment.[84] Courts addressing this prong of the test for ineffective counsel must consider the reasonableness of counsel's actions in light of all the circumstances.[85]

To prevail on the actual prejudice prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[86] A reasonable probability is "a probability sufficient to undermine confidence in the outcome."[87] As courts determine whether this prong is satisfied, they must consider "the relative role that the alleged trial errors played in the total context of [the] trial."[88]

As the record shows, the state trial court identified the governing legal standard found in *Strickland* and applied it to Petitioner's ineffective assistance of counsel claims. Because Petitioner repeats the same ineffective-assistance claims on federal *habeas corpus* review, the central question "is not whether a federal court believes the state court's determination under *Strickland* was incorrect but whether [it] was unreasonable—a substantially higher threshold."[89] In addition, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."[90] Thus, this standard is considered "doubly deferential" on *habeas corpus* review.[91] For the reasons discussed below,

---

[84] *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001).

[85] *See Strickland*, 466 U.S. at 689.

[86] *Id.* at 694.

[87] *Id.*

[88] *Crockett*, 796 F.2d at 793.

[89] *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 478 (2007)) (quotation marks omitted).

[90] *Id.*

[91] *Id. See also Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011).

Petitioner has not shown that the state court's decision was unreasonable under this doubly deferential standard. Therefore, upon *de novo* review the Court finds the Magistrate Judge did not err and overrules Defendant's objections.

### i. Failure to Raise Right to Speedy Trial

The Magistrate Judge found Petitioner's claim that his trial counsel was ineffective in failing to raise a speedy trial issue without merit. Petitioner objects to this finding, arguing that six years elapsed between his arrest date on August 12, 2002, when taken into custody by Orleans Parish law enforcement, and December 2008, when he was prosecuted in St. Tammany Parish.

"The Sixth Amendment guarantees that in all criminal prosecutions, the accused shall enjoy the right to a speedy trial,"[92] but the Supreme Court has not established a bright-line rule as to how much time must elapse before a speedy trial violation occurs.[93] Instead, the Supreme Court has established a balancing test, under which courts should weigh: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant.[94]

In his petition, Petitioner indicated that he was arrested on August 12, 2002, "in Orleans Parish for a string of robberies that went from New Orleans to Slidell [in St. Tammany Parish] and back to New Orleans."[95] While in the custody of Orleans Parish officials, St. Tammany Parish officials questioned Petitioner and taped his statements.[96] Petitioner remained in Orleans Parish

---

[92] *Vermont v. Brillon*, 556 U.S. 81, 89 (2009) (citations omitted).

[93] *See id.* (finding a three year delay between charges and trail insufficient); *United States v. Lovasco*, 431 U.S. 783 (1977) (finding an eighteen month delay between indictment and confession insufficient delay); *Barker v. Wingo*, 407 U.S. 514 (1972) (finding a five year delay between arrest and trial insufficient delay).

[94] *Vermont*, 556 U.S. at 90.

[95] Rec. Doc. 1-1 at 8.

[96] *Id.* at 9.

officials' custody, "then went through a succession of jail placements in the aftermath of Hurricanes Katrina and Gustav."[97] "After two more years of postponements and hearings, New Orleans dismissed all charges on prescription."[98] Then, St. Tammany Parish officials arrested and booked Petitioner on November 22, 2007.[99] On January 2, 2008, Petitioner was charged by Bill of Information with two counts of armed robbery in St. Tammany Parish.[100] The jury trial commenced less than a year later on December 9, 2008.[101]

For Sixth Amendment purposes, "only a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge engage the particular protections of [the Speedy Trial Clause.]"[102] Therefore, for constitutional purposes, the applicable time delays did not begin to run until Petitioner was arrested and held to answer for criminal charges by St. Tammany Parish officials on November 22, 2007. From November 22, 2007, until the commencement of trial on December 9, 2008, Petitioner experienced a delay of 382 days which is far less than delays approved by the Supreme Court. The reason for the delay was apparently in part due to continuances requested by Petitioner.[103] Review of the state record reveals no discernable prejudice to Petitioner's ability to bring a defense. Accordingly, Petitioner's speedy trial arguments are without merit, and it would have been futile for his counsel to make such arguments.

---

[97] *Id.* Hurricane Katrina formed and dissipated around August 23-30, 2005; Hurricane Gustav formed and dissipated around August 25-September 4, 2008.

[98] *Id.*

[99] State Rec. Vol III of IV, Initial Booking Receipt (Nov. 22, 2007).

[100] State Rec. Vol I of IV, Felony Bill of Information (Jan. 2, 2008).

[101] State Rec. Vol. I of IV, Trial Transcript at 105 (Dec. 9, 2008).

[102] *Lovasco*, 431 U.S. at 788 (quoting *United States v. Marion*, 404 U.S. 307, 320 (1971)).

[103] State Rec. Vol. I of IV, Trial Transcript at 107.

Petitioner also contends that his trial counsel failed to challenge the timeliness of his prosecution under Louisiana Code of Criminal Procedure article 578, which requires the State to commence trial within "two years from the date of institution of the prosecution" in non-capital felony cases.[104] The date of institution of prosecution is "the date when the indictment is returned or the bill of information is filed."[105] The Bill of Information was filed on January 2, 2008, and the trial commenced on December 9, 2008. Because the case was prosecuted within the two year requirement under article 578, there was no violation, and it would have been futile for Petitioner's trial counsel raise the argument.[106]

Trial counsel cannot be held ineffective for failing to pursue futile courses of action where Petitioner's claims had no legal merit.[107] Petitioner has not demonstrated that the state court's decision denying his claim was contrary to, or involved an unreasonable application of clearly established federal law, as required by the Supreme Court. Accordingly, upon *de novo* review and under the deferential standards of review mandated by the AEDPA, the Court finds Petitioner's claim without merit.

### ii. Failure to Ensure Proper Jury Instructions

Petitioner argued that the jury instructions did not include a charge to consider the

---

[104] LA. CODE CRIM. PROC. art. 578(A)(2).

[105] *State v. Watts*, 99-57 (La. App. 5 Cir. 5/19/99); 738 So. 2d 628, 629 (citing *State v. Gladden*, 260 So. 2d 388 (1972)).

[106] Petitioner's trial counsel argued that under LA. CODE CRIM. PROC. art. 572, which requires prosecution to commence within six years after the offense is committed, the Bill of Information should be quashed. *See* State Rec. Vol. I of IV, Motion to Quash at 56. This argument was without merit because following the initial August 12, 2002 arrest, the prosecution commenced on January 2, 2008 with the filing of the Bill of Information which resulted in the accrual of only five years, four months, and approximately twenty-one days of the allotted six years.

[107] *Johnson v. Cockrell*, 306 F.3d 249, 255 (2002) (holding a failure to object does not rise to the level of constitutionally deficient performance when the objection is futile).

17

voluntariness of statements made by him while in police custody. The Magistrate Judge reviewed the trial court's jury instruction, finding that the court did in fact instruct the jury to consider the voluntariness of Petitioner's statements, and concluded that Petitioner was not entitled to relief under that claim. Petitioner objects to the Magistrate Judge's conclusion, arguing that his voluntary statements and cooperation with the police should have been framed as him "leaving his faith . . . in the minds and hearts of the jury."[108]

A petitioner must prove that an erroneous jury instruction "by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned."[109] In the instant case, the state trial court provided the following instruction to the jury:

> In determining the weight or value to be accorded in a statement made by the defendant, you should consider all the circumstance[s] under which the statement was made. In making that determination, you should consider whether the statement was made freely, voluntarily, without the influence of fear, duress, threats, intimidation, inducement or promises.[110]

The jury instruction contained a statement urging the jury to consider the voluntariness of Petitioner's statement. Petitioner has not shown that the jury instruction given by the trial court was itself constitutionally deficient or a violation of any clearly established federal law. Nor has Petitioner shown that but for his trial counsel's failure to raise such violation, the outcome of his trial would have been different. Petitioner has not demonstrated that the state court's decision denying his claim was contrary to, or involved an unreasonable application of clearly established federal law,

---

[108] Rec. Doc. 14 at 19.

[109] *Henderson v. Kibbe*, 431 U.S. 145 (1977) (citations and quotation marks omitted).

[110] State Rec. Vol. II of IV, Trial Transcript at 458 (Dec. 10, 2008).

as required by the Supreme Court. Accordingly, upon *de novo* review and under the deferential standards of review mandated by the AEDPA, the Court finds Petitioner's claim without merit.

### iii. Failure to Object to Prosecutorial Misconduct

Petitioner also objects to the Magistrate Judge's finding that his trial counsel was not ineffective for either failing to object to the prosecutor's misconduct or for failing to raise an evidentiary objection to the playing of a taped confession.

Two officers, Sergeant Bobby Campbell and Detective Vaughn Whitehead, were present when Petitioner made his taped confession about the armed robberies.[111] At trial, Petitioner's taped confession was played once in its entirety during the prosecutor's direct examination of Sergeant Campbell and then six times for intermittent voice and statement verification during the prosecutor's cross-examination of Detective Whitehead in defendant's case.[112]

A prosecutor's conduct "does not present a claim of constitutional magnitude in a federal *habeas* action unless it is so prejudicial that the state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause."[113] To prove this, a petitioner must demonstrate that the misconduct was "persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred but for the improper" conduct.[114] The prosecutor's conduct must be evaluated in the context of the entire trial.[115] A petitioner must demonstrate that

---

[111] *Id.* at 433–34.

[112] *Id.* at 418, 440–43.

[113] *Jones v. Butler*, 864 F.2d 348, 356 (1988).

[114] *Id.*

[115] *Greer v. Miller*, 483 U.S. 756, 765–66 (1987) (quoting *Darden v. Wainwright*, 477 U.S. 168, 179 (1986)).

prosecutorial misconduct rendered his trial "fundamentally unfair" by showing "a reasonable probability that the verdict might have been different had the trial been properly conducted."[116]

The prosecutor's second playing of the tape occurred during cross-examination of a witness presented by Petitioner was neither persistent nor pronounced, and Petitioner has not shown that it made his trial fundamentally unfair. Further, the record reflects that Petitioner's trial counsel filed a written motion to suppress the confession before trial.[117] The trial judge ruled that the tape could be entered into evidence and played before the jury.[118] During opening statements, defense counsel warned the jury to discount Petitioner's statements because they were not "willingly made."[119] Under the circumstances, trial counsel duly executed his responsibilities to Petitioner and contested the admittance of the taped confession and the prosecutor's use thereof.

Moreover, even without the second playing of the tape, the evidence against Petitioner was substantial. Both Sergeant Campbell and Detective Whitehead testified that they were present during Petitioner's confession. Additionally, the jury heard testimony from Detective Ralph Morel that following the Burger King robbery and theft of the store manager's vehicle, Detective Morel stopped a van matching the description of the one stolen.[120] Detective Morel positively identified Petitioner as the driver of the van.[121] Finally, Petitioner's shoes matched a partial print found at the scene of

---

[116] *Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988) (quoting *Kirkpatrick v. Blackburn*, 777 F.2d 272, 278–79 (5th Cir. 1985).

[117] State Rec. Vol. I of IV, Motion to Suppress Confession (May 15, 2008).

[118] State Rec. Vol. II of IV, Trial Transcript at 416–17 (Dec. 10, 2008).

[119] *Id.* at 300.

[120] *Id.* at 371–74.

[121] *Id.* at 373.

the robbery.[122] In sum, there was ample evidence supporting Petitioner's conviction even if the taped confession had not existed.

Therefore, given the deference afforded counsel's performance, this Court does not find Petitioner's trial counsel ineffective in failing to object to the second playing of Petitioner's confession. Petitioner has not demonstrated that the state court's decision denying his claim was contrary to, or involved an unreasonable application of clearly established federal law, as required by the Supreme Court. Accordingly, upon *de novo* review and under the deferential standards of review mandated by the AEDPA, the Court finds Petitioner's claim without merit.

### iv. Sleeping During Trial

Petitioner objects to the Magistrate Judge's conclusion that trial counsel was not ineffective for falling asleep during an inconsequential portion of the *voir dire*. Petitioner asserts that trial counsel's inattentiveness not only gave the prosecutor the opportunity for misconduct but also gave the jurors the impression that the defense had a weak case.

The Fifth Circuit has granted federal *habeas corpus* relief for ineffective counsel where the attorney "was repeatedly asleep, and hence unconscious, as witnesses adverse to [his client] were examined and other evidence against [his client] was introduced."[123] The Fifth Circuit equated sleeping counsel with absent counsel and held that the "absence of counsel at critical stages of a defendant's trial undermines the fairness of the proceeding and therefore requires a presumption that the defendant was prejudiced."[124] However, sleeping counsel does not *per se* merit a presumption

---

[122] *Id.* at 385–89.

[123] *Burdine v. Johnson*, 262 F.3d 336, 349 (5th Cir. 2001).

[124] *Id.* at 341.

of prejudice.[125] The Fifth Circuit noted the holding "that the repeated unconsciousness of [the petitioner's] counsel through not insubstantial portions of the critical guilt-innocence phase of [the petitioner's] capital murder trial warrants a presumption of prejudice, is limited to the egregious facts found by the state habeas court in this case."[126]

In the instant case, the record reflects that trial counsel fell asleep only once, during *voir dire* while the prosecutor was asking whether jurors understood the "concept of principals."[127] At that point, the trial court judge called defense counsel to the bench. During the discussion at the bench, defense counsel stated, "I was looking at my notes and just drifted off for a second."[128] Defense counsel assured the trial court that it would not happen again.[129]Petitioner claims his trial counsel fell asleep on other occasions, but no evidence supports that allegation.

There is neither evidence of multiple occasions of Petitioner's trial counsel falling asleep nor any evidence that counsel fell asleep during the questioning of witnesses or the presentation of evidence to the jury. Therefore, in no way do the circumstances of Petitioner's trial compare to the egregious actions of the trial attorney in *Burdine* where the attorney fell asleep "between two and five times while the prosecuting attorney questioned witnesses," "as many as ten times during trial," and "at one point for a good . . . [ten] minutes."[130] In sum, Petitioner's trial counsel dozed off during an inconsequential portion of a three day trial, only once, and during the *voir dire* before testimony

---

[125] *Id.* at 349.

[126] *Id.*

[127] State Rec. Vol. I of IV, Trial Transcript at 151 (Dec. 10, 2008).

[128] *Id.*

[129] *Id.*

[130] *Burdine*, 262 F.3d at 349.

or the presentation of evidence began.

Even if Petitioner had met his burden to demonstrate a deprivation of counsel during part of the trial, he must also demonstrate that counsel's alleged ineffectiveness prejudiced the outcome of his case. Petitioner argues that his case was prejudiced because it gave the prosecutor the opportunity for misconduct and gave the jurors the impression that the defense had a weak case. As discussed above, Petitioner has not demonstrated prosecutorial misconduct. Further, given the substantial evidence against Petitioner, he has not shown that the outcome of his case would have been different if his trial counsel had not fallen asleep during *voir dire*. Petitioner has not demonstrated that the state court's decision denying his claim was contrary to, or involved an unreasonable application of clearly established federal law, as required by the Supreme Court. Accordingly, upon *de novo* review and under the deferential standards of review mandated by the AEDPA, the Court finds Petitioner's claim without merit.

## C. Ineffective Assistance of Appellate Counsel

Finally, Petitioner objects to the Magistrate Judge's finding that Petitioner's appellate counsel was not ineffective for failing to raise prosecutorial misconduct, trial counsel's improper arguing of the motion to quash the bill of information, or trial counsel's sleeping during trial.

Similar to claims alleging ineffective trial counsel, claims asserting ineffective appellate counsel are also analyzed using the two-part *Strickland* analysis. Under *Strickland*, Petitioner must demonstrate: (1) that "counsel's representation fell below an objective standard of reasonableness;" and (2) there was a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different."[131] Petitioner must demonstrate that the appellate court

---

[131] *Strickland*, 466 U.S. at 687–88, 694. *See also Kimler*, 167 F.3d at 893.

would have vacated or reversed the trial court judgment based on the alleged error.[132]

Petitioner asserts that appellate counsel should have raised prosecutorial misconduct on appeal, but as discussed above, Petitioner has not demonstrated that prosecutorial misconduct occurred. Petitioner alleges next that appellate counsel failed to raise on appeal trial counsel's improper argument concerning Petitioner's motion to quash the Bill of Information, but Petitioner was not entitled to have the Bill of Information quashed under either article 572 or article 578 of the Louisiana Code of Criminal Procedure. Finally, Petitioner avers that the appellate counsel was ineffective for failing to raise on appeal that Petitioner's defense was prejudiced by trial counsel falling asleep. As discussed above, Petitioner has not demonstrated that he was prejudiced by his trial counsel falling asleep during *voir dire*. Petitioner has not shown that his appellate counsel's representation fell below an objective standard of reasonableness. Given the strong evidence of his guilt, Petitioner suffered no prejudice resulting from any of these claims. Petitioner has not demonstrated that the state court's decision denying his claim was contrary to, or involved an unreasonable application of clearly established federal law, as required by the Supreme Court. Accordingly, upon *de novo* review and under the deferential standards of review mandated by the AEDPA, the Court finds Petitioner's claim without merit.

---

[132] *Briseno v. Cockrell*, 274 F.3d 204, 210 (5th Cir. 2001).

<u>**V. Conclusion**</u>

For the reasons stated above,

**IT IS HEREBY ORDERED** that Petitioner's objections are **OVERRULED**;

**IT IS FURTHER ORDERED** that the Court **ADOPTS** the Magistrate Judge's recommendation, and Petitioner Eric Bridges's petition for issuance of a Writ of *Habeas Corpus*, pursuant to 28 U.S.C. § 2254, is **DENIED** and **DISMISSED WITH PREJUDICE**.

**NEW ORLEANS, LOUISIANA**, this <u>24th</u>day of July, 2014.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**